UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GRAHAM CAPITAL MANAGEMENT, L.P., | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| STEVEN BONGIOVANNI, | : | |
| | : | |
| Defendant. | : | OCTOBER 5, 2018 |

## VERIFIED COMPLAINT

Plaintiff Graham Capital Management, L.P., by and for its Complaint against Defendant Steven Bongiovanni, hereby alleges as follows:

## I.   PARTIES

1.   Plaintiff Graham Capital Management, L.P. ("GCM") is a Delaware limited partnership with its principal place of business in Rowayton, Connecticut.

2.   GCM is an investment firm that manages approximately $15 billion in assets on behalf of global pensions, wealth funds, endowments and foundations, and individual investors, using a variety of discretionary and quantitative investment strategies.

3.   Defendant Steven Bongiovanni is a resident of Pownal, Vermont and a former employee of GCM.

## II.   JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because GCM and Bongiovanni are citizens of different states and the matter in controversy exceeds the value of $75,000, exclusive of interest and costs.

5.   GCM is a limited partnership, and none of its partners is a resident of Vermont.

100762418.4

6.      The value of the impairment that GCM seeks to prevent in this action exceeds $75,000, as the confidential information that Bongiovanni took from GCM and has not returned is used by GCM to trade billions of dollars worth of financial instruments, including futures, foreign currencies, and equities.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to GCM's claims occurred in Connecticut.

8.      In Bongiovanni's employment agreement with GCM, the parties agreed to "submit to the exclusive jurisdiction of the courts of the State of Connecticut and the federal courts of the United States of America located in such state within Fairfield County."

## III.   FACTUAL BACKGROUND

9.      GCM employed Bongiovanni in its Research Department, most recently as a Senior Quantitative Research Analyst, pursuant to an October 6, 2006 employment agreement, a copy of which is attached hereto as Exhibit A (the "Employment Agreement").

10.     Section 1 of the Employment Agreement states:

> The Employee shall engage in research support and such other functions on behalf of the Company as are from time to time assigned to the Employee by the Chairman of the Company or his designee, all in a manner consistent with all applicable laws and regulations, any code of ethics, compliance manual, employee handbook or other oral or written internal procedures as may be adopted by the Company from time to time, and subject to such oral or written directives as shall be specified by the Company from time to time.

(Ex. A § 1.)

11.     During his employment at GCM, Bongiovanni's responsibilities included developing, implementing, and maintaining GCM's Quantitative Execution Systems ("QES"). The purpose of QES was to provide GCM with an electronic trading platform that would support the execution of GCM's systematic trading strategies at the most favorable prices available for GCM's clients.

-2-

12.    During his employment at GCM, Bongiovanni's responsibilities also included alpha research, which involves the development of computer software programs for systematic trading.

13.    In connection with his work for GCM, Bongiovanni had broad access to GCM's confidential, proprietary, and trade secret information, including details and parameters of GCM's various trading systems and models.

14.    In connection with his work for GCM, Bongiovanni attended Research Department meetings at which there was wide-ranging discussions of GCM's confidential, proprietary, and trade secret information, including details and parameters of GCM's various trading systems and models.  Research Department meetings also included discussions regarding ideas for and the development of new trading systems.

15.    Maintaining and protecting the confidentiality of information concerning GCM's trading systems and models is crucial to GCM's business.

16.    GCM strives to protect the confidentiality of information concerning its trading systems and models, including by requiring employees who have access to such information to acknowledge the confidentiality of such information and not to remove such information from GCM's premises and computer systems.

17.    Section 6(a) of the Employment Agreement (which is a standard provision in all of GCM's employment agreements) states:

> The Employee agrees that, by virtue of the Employee's position of trust and involvement in the most confidential activities of the Company during the term of employment, the Employee will have access to, come into possession of, and otherwise become familiar with, confidential information and trade secrets relating to the business of the Company.  The Employee agrees that such confidential information and trade secrets are the sole and exclusive property of the Company.  In consideration of, and as a condition to Employee's access to such confidential information and trade secrets, the *Employee further agrees that, during the term of employment, and at all times following*

-3-

*termination of employment, the Employee will hold in a fiduciary capacity solely for the benefit of the Company and will not communicate, divulge, discuss, use, furnish, disclose, or make accessible to anyone such confidential information and trade secrets other than in the ordinary course of the Employee's work for the Company.  Employee agrees to take reasonable steps to assure that such confidential information and trade secrets are stored securely on the premises of the Company and not to remove or send any such information from the premises of the Company without the express written consent of the Company.*  For the purposes of this Agreement, confidential information and trade secrets shall include, without limitation, proprietary investment and trading models, programs and systems and the underlying and associated design, source code, documents, data files, investment strategies, trading system rules, risk management techniques, algorithms, mathematical equations used to design trading strategies, and other information of a confidential nature (whether written or oral, contained in computer files or software, or otherwise) relating to or concerning the business, operations, management, services, products, activities or affairs of the Company, including client lists and client names.

(Ex. A § 6(a) (italics added).)

18.    Section 6(b) of the Employment Agreement states:

Upon termination of employment, the Employee agrees to return to the Company all Company documents, papers, records, computer programs, software or other material, or copies of such material, in whatever form, in the possession or under the control of the Employee, including materials which may contain or from which may be derived confidential information and trade secrets, together with all equipment, documents, notes, keys, codes or other work product or property which is connected with or derived from the Employee's services to the Company and all copies thereof in whatever form.

(Ex. A § 6(b).)

19.    On September 27, 2018, GCM's counsel took Bongiovanni's deposition in connection with a lawsuit that Bongiovanni had brought against GCM.  Excerpts of Bongiovanni's deposition are attached hereto as Exhibit B.

20.    During Bongiovanni's September 27, 2018 deposition, he testified under oath that he had secretly recorded various meetings at GCM during 2017 and 2018.  The meetings that Bongiovanni secretly recorded included, but were not limited to, at least three Research Department meetings at which there was discussion regarding GCM's confidential and proprietary trading systems and models.

100762418.4

21.     Bongiovanni testified at his September 27, 2018 deposition that he has in his possession at least five recordings of meetings with GCM personnel, including three Research Department meetings.  Bongiovanni testified that he may also have recordings of other GCM meetings on backup drives.

22.     Bongiovanni testified at his September 27, 2018 deposition that he surreptitiously recorded the GCM meetings using a hidden recording device, then later saved them to backup discs.  He also testified that he stores the backup discs at various locations, including his primary residence in Vermont and his secondary residence in Connecticut.

23.     Bongiovanni admitted at his deposition that he did not seek or receive permission to record GCM Research Department meetings, or other meetings with GCM personnel, from the participants in those meetings, from his supervisor, from Human Resources, or from anyone else at GCM.

24.     Bongiovanni also testified in his deposition that, during the same time period that he was secretly recording GCM Research Department meetings and other meetings with GCM personnel, he was actively seeking employment with other hedge funds and/or investment advisory firms.

25.     Bongiovanni testified in his deposition that he has participated in approximately 12 interviews with other potential employers since the start of 2016.  He refused to identify the potential employers with whom he interviewed.

26.     By secretly recording meetings of the GCM Research Department, removing those recordings from GCM's premises, making copies of the recordings, and retaining the recordings in his possession, all without the express written consent of GCM, Bongiovanni breached the Employment Agreement.

-5-

27.     In light of Bongiovanni's breaches of the Employment Agreement that were revealed in his September 27, 2018 deposition, GCM terminated Bongiovanni's employment on October 1, 2018.  A copy of GCM's letter confirming the termination of Bongiovanni's employment is attached hereto as Exhibit C.

28.     In accordance with Section 6(b) of the Employment Agreement, on October 1, 2018, GCM instructed Bongiovanni to immediately return to GCM "all Company documents, papers, records, computer programs, software or other material, or copies of such material, in whatever form, . . . including materials which may contain or from which may be derived confidential information and trade secrets, together with all equipment, documents, notes, keys, codes or other work product or property which is connected with or derived from [Bongiovanni's] services to the Company, and all copies thereof in whatever form."  (Ex. C.) GCM informed Bongiovanni that the foregoing instruction includes, but is not limited to, any and all recordings of GCM meetings that are in Bongiovanni's custody, control, or possession. (*Id.*)

29.     Also on October 1, 2018, GCM's attorney sent an e-mail to Bongiovanni's attorneys, attaching a copy of the notice of Bongiovanni's termination and stating, "As set forth in the third paragraph of the attached letter, Mr. Bongiovanni has a legal obligation to return all documents, recordings and/or other materials in his possession, custody or control that constitute, contain, refer to or from which may be derived confidential and/or proprietary information of GCM.  Please have all such documents, recordings and/or other materials delivered to my attention by no later than noon on Wednesday, October 3rd."

30.     Bongiovanni did not return his recordings of GCM Research Department meetings, or any other confidential or proprietary information of GCM, by noon on October 3.

Neither Bongiovanni nor his attorneys have responded in any way to GCM's demand for the return of its confidential and proprietary information.

31.     Bongiovanni still has not returned to GCM his recordings of GCM meetings, and the other confidential and proprietary information of GCM that is in his possession, custody or control.

32.     Bongiovanni's recordings of GCM Research Department meetings and his failure to return those recordings to GCM have the potential to cause irreparable harm to GCM, which cannot be adequately compensated by money damages.  The confidential GCM information contained on Bongiovanni's recordings could enable a third party to replicate or front-run one or more of GCM's proprietary trading strategies.

33.     Section 12 of the Employment Agreement states:

> In the event of a breach or threatened breach by the Employee of paragraph 6, 7 or 8 of this Agreement, the Employee hereby expressly (i) agrees that the Company would suffer irreparable harm which may not be adequately compensated by money damages; (ii) agrees that the Company shall be entitled to an injunction, specific performance and other equitable relief to prevent a violation of the terms and conditions of this Agreement; and (iii) waives any requirement for the securing or posting of any bond in connection with the obtaining of any such relief.

(Ex. A § 12.)

34.     Section 12 of the Employment Agreement states, "If the Company prevails in any suit brought to enforce its rights under this Agreement, the Employee shall reimburse the Company for its expenses, including costs and attorneys' fees, incurred in connection with such a suit."  (Ex. A § 12.)

**COUNT ONE – Breach of Contract**

35.     GCM repeats and realleges the allegations contained in Paragraphs 1-__ as if fully set forth herein.

100762418.4

36.     The Employment Agreement is a valid and enforceable contract between GCM and Bongiovanni.

37.     GCM performed its obligations under the Employment Agreement.

38.     Bongiovanni breached the Employment Agreement by secretly recording meetings that included discussions of GCM's confidential information and trade secrets, removing those recordings from GCM's premises, making copies of the recordings, and failing to return all copies of the recordings to GCM.

39.     Bongiovanni's breaches of the Employment Agreement threaten to cause irreparable harm to GCM.

**COUNT TWO – Breach of Fiduciary Duty**

40.     GCM repeats and realleges the allegations contained in Paragraphs 1-__ as if fully set forth herein.

41.     Bongiovanni's employment in the Research Department at GCM, and his access to GCM's confidential and proprietary information and trade secrets, placed him in a position of trust and confidence with respect to GCM.

42.     In connection with his employment at GCM, Bongiovanni owed a fiduciary duty to GCM.

43.     The fiduciary duty that Bongiovanni owed to GCM included a duty of loyalty.

44.     Bongiovanni breached his fiduciary duty to GCM, including his duty of loyalty, by secretly recording meetings that included discussions of GCM's confidential information and trade secrets, removing those recordings from GCM's premises, making copies of the recordings, and failing to return all copies of the recordings to GCM.

100762418.4

45.     Bongiovanni's breaches of fiduciary duty threaten to cause irreparable harm to GCM.

**WHEREFORE**, GCM prays that the Court grant the following relief:

(1)     An injunction requiring Bongiovanni to return to GCM all GCM confidential information and trade secrets, in any form, in his possession, custody, or control;

(2)     An injunction permanently barring Bongiovanni from using any GCM confidential information or trade secrets in any manner or for any purpose;

(3)     An injunction permanently barring Bongiovanni from disclosing any GCM confidential information or trade secrets to any person or entity outside of GCM;

(4)     All expenses incurred by GCM in connection with this action, including costs and attorneys' fees; and

(5)     Such other and further relief as the Court deems just and proper.

> PLAINTIFF, GRAHAM CAPITAL
> MANAGEMENT, L.P.
>
> By:     /s/ Daniel L. Schwartz
> Daniel L. Schwartz (ct09862)
> Howard Fetner (ct26870)
> Day Pitney LLP
> One Canterbury Green
> 201 Broad Street
> Stamford, CT 06901
> T: (203) 977-7300
> F: (203) 977-7301
> dlschwartz@daypitney.com
> hfetner@daypitney.com

100762418.4

## VERIFICATION

I, Paul Sedlack, am Chief Operating Officer of Graham Capital Management, LP, the

plaintiff in this action.  I have read the foregoing complaint and know the contents thereof, and

the same is true to my own knowledge, except as to matters therein stated to be alleged on

information and belief, and as to those matters, I believe them to be true.  I verify under penalty

of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 5, 2018.

_____
Paul Sedlack

100762418 4

## **CERTIFICATION**

I hereby certify that on this 5th day of October, 2018, the foregoing was filed

electronically and served by mail on anyone unable to accept electronic filing.  Notice of this

filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's CM/ECF system.

I further certify that on this 5th day of October, 2018, a copy of the foregoing was sent by

e-mail to:

Mark P. Carey
Mark P. Carey, P.C.
71 Old Post Road, Suite One
Southport, CT 06890
mcarey@capclaw.com

/s/ Daniel L. Schwartz

100762418.4