UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GRAHAM CAPITAL MANAGEMENT, L.P., | : | CIVIL ACTION NO. 18-cv-01665 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| STEVEN BONGIOVANNI, | : | |
| | : | |
| Defendant. | : | OCTOBER 5, 2018 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Graham Capital Management, L.P. ("GCM") submits this combined memorandum of law in support of its motions for a temporary restraining order and for a preliminary injunction, to prevent Defendant Steven Bongiovanni from using any GCM confidential information or trade secrets in any manner or for any purpose or disclosing any GCM confidential information or trade secrets to any person or entity outside of GCM, and to require Bongiovanni to return to GCM all GCM confidential information and trade secrets, in any form, in his possession, custody, or control.

**I.      STATEMENT OF FACTS**

GCM is a Rowayton, Connecticut-based investment firm that manages approximately $15 billion in assets on behalf of global pensions, wealth funds, endowments and foundations, and individual investors, using a variety of discretionary and quantitative investment strategies. (Verified Compl. ¶¶ 1-2.)  Defendant Steven Bongiovanni is a former employee of GCM.  (Id. ¶ 3.)  GCM employed Bongiovanni in its Research Department, most recently as a Senior Quantitative Research Analyst, pursuant to an October 6, 2006 employment agreement (the "Employment Agreement").  (Verified Compl. ¶ 9.)

Section 1 of the Employment Agreement states:

> The Employee shall engage in research support and such other functions on behalf of the Company as are from time to time assigned to the Employee by the Chairman of the Company or his designee, all in a manner consistent with all applicable laws and regulations, any code of ethics, compliance manual, employee handbook or other oral or written internal procedures as may be adopted by the Company from time to time, and subject to such oral or written directives as shall be specified by the Company from time to time.

(Verified Compl. ¶ 10; Verified Compl. Ex. A § 1.)

During his employment at GCM, Bongiovanni's responsibilities included developing, implementing, and maintaining GCM's Quantitative Execution Systems ("QES"). The purpose of QES was to provide GCM with an electronic trading platform that would support the execution of GCM's systematic trading strategies at the most favorable prices available for GCM's clients. (Verified Compl. ¶ 11.) During his employment at GCM, Bongiovanni's responsibilities also included alpha research, which involves the development of computer software programs for systematic trading. (*Id.* ¶ 12.)

In connection with his work for GCM, Bongiovanni had broad access to GCM's confidential, proprietary, and trade secret information, including details and parameters of GCM's various trading systems and models. (Verified Compl. ¶ 13.) In connection with his work for GCM, Bongiovanni attended Research Department meetings at which there was wide-ranging discussions of GCM's confidential, proprietary, and trade secret information, including details and parameters of GCM's various trading systems and models. Research Department meetings also included discussions regarding ideas for and the development of new trading systems. (*Id.* ¶ 14.)

Maintaining and protecting the confidentiality of information concerning GCM's trading systems and models is crucial to GCM's business. (Verified Compl. ¶ 15.) GCM strives to protect the confidentiality of information concerning its trading systems and models, including by requiring employees who have access to such information to acknowledge the confidentiality

of such information and not to remove such information from GCM's premises and computer systems.  (*Id.* ¶ 16.)

Section 6(a) of the Employment Agreement (which is a standard provision in all of GCM's employment agreements) states:

> The Employee agrees that, by virtue of the Employee's position of trust and involvement in the most confidential activities of the Company during the term of employment, the Employee will have access to, come into possession of, and otherwise become familiar with, confidential information and trade secrets relating to the business of the Company.  The Employee agrees that such confidential information and trade secrets are the sole and exclusive property of the Company.  In consideration of, and as a condition to Employee's access to such confidential information and trade secrets, the *Employee further agrees that, during the term of employment, and at all times following termination of employment, the Employee will hold in a fiduciary capacity solely for the benefit of the Company and will not communicate, divulge, discuss, use, furnish, disclose, or make accessible to anyone such confidential information and trade secrets other than in the ordinary course of the Employee's work for the Company.  Employee agrees to take reasonable steps to assure that such confidential information and trade secrets are stored securely on the premises of the Company and not to remove or send any such information from the premises of the Company without the express written consent of the Company*.  For the purposes of this Agreement, confidential information and trade secrets shall include, without limitation, proprietary investment and trading models, programs and systems and the underlying and associated design, source code, documents, data files, investment strategies, trading system rules, risk management techniques, algorithms, mathematical equations used to design trading strategies, and other information of a confidential nature (whether written or oral, contained in computer files or software, or otherwise) relating to or concerning the business, operations, management, services, products, activities or affairs of the Company, including client lists and client names.

(Verified Compl. ¶ 17; Verified Compl. Ex. A § 6(a) (italics added).)

Section 6(b) of the Employment Agreement states:

> Upon termination of employment, the Employee agrees to return to the Company all Company documents, papers, records, computer programs, software or other material, or copies of such material, in whatever form, in the possession or under the control of the Employee, including materials which may contain or from which may be derived confidential information and trade secrets, together with all equipment, documents, notes, keys, codes or other work product or property which is connected with or derived from the Employee's services to the Company and all copies thereof in whatever form.

(Verified Compl. ¶ 18; Verified Compl. Ex. A § 6(b).)

On September 27, 2018, GCM's counsel took Bongiovanni's deposition in connection with a lawsuit that Bongiovanni had brought against GCM. (Verified Compl. ¶ 19.) During Bongiovanni's September 27, 2018 deposition, he testified under oath that he had secretly recorded various meetings at GCM during 2017 and 2018. The meetings that Bongiovanni secretly recorded included, but were not limited to, at least three Research Department meetings at which there was discussion regarding GCM's confidential and proprietary trading systems and models. (*Id.* ¶ 20.) The confidential information that Bongiovanni secretly recorded is used by GCM to trade billions of dollars worth of financial instruments, including futures, foreign currencies, and equities. (*Id.* ¶ 6.)

Bongiovanni testified at his September 27, 2018 deposition that he has in his possession at least five recordings of meetings with GCM personnel, including three Research Department meetings. Bongiovanni testified that he may also have recordings of other GCM meetings on backup drives. (Verified Compl. ¶ 21.) Bongiovanni testified at his September 27, 2018 deposition that he surreptitiously recorded the GCM meetings using a hidden recording device, then later saved them to backup discs. He also testified that he stores the backup discs at various locations, including his primary residence in Vermont and his secondary residence in Connecticut. (*Id.* ¶ 22.) Bongiovanni admitted at his deposition that he did not seek or receive permission to record GCM Research Department meetings, or other meetings with GCM personnel, from the participants in those meetings, from his supervisor, from Human Resources, or from anyone else at GCM. (*Id.* ¶ 23.)

Bongiovanni testified in his deposition that, during the same time period that he was secretly recording GCM Research Department meetings and other meetings with GCM personnel, he was actively seeking employment with other hedge funds and/or investment

-4-

advisory firms. (Verified Compl. ¶ 24.) Bongiovanni testified in his deposition that he has participated in approximately 12 interviews with other potential employers since the start of 2016. He refused to identify the potential employers with whom he interviewed. (*Id.* ¶ 25.)

By secretly recording meetings of the GCM Research Department, removing those recordings from GCM's premises, making copies of the recordings, and retaining the recordings in his possession, all without the express written consent of GCM, Bongiovanni breached the Employment Agreement. (Verified Compl. ¶ 26.) In light of Bongiovanni's breaches of the Employment Agreement that were revealed in his September 27, 2018 deposition, GCM terminated Bongiovanni's employment on October 1, 2018. (Verified Compl. ¶ 27; Verified Compl. Ex. C.)

In accordance with Section 6(b) of the Employment Agreement, on October 1, 2018, GCM instructed Bongiovanni to immediately return to GCM "all Company documents, papers, records, computer programs, software or other material, or copies of such material, in whatever form, . . . including materials which may contain or from which may be derived confidential information and trade secrets, together with all equipment, documents, notes, keys, codes or other work product or property which is connected with or derived from [Bongiovanni's] services to the Company, and all copies thereof in whatever form." (Verified Compl. ¶ 28; Verified Compl. Ex. C.) GCM informed Bongiovanni that the foregoing instruction includes, but is not limited to, any and all recordings of GCM meetings that are in Bongiovanni's custody, control, or possession. (Verified Compl. ¶ 28; Verified Compl. Ex. C.)

Also on October 1, 2018, GCM's attorney sent an e-mail to Bongiovanni's attorneys, attaching a copy of the notice of Bongiovanni's termination and stating, "As set forth in the third paragraph of the attached letter, Mr. Bongiovanni has a legal obligation to return all documents,

recordings and/or other materials in his possession, custody or control that constitute, contain, refer to or from which may be derived confidential and/or proprietary information of GCM. Please have all such documents, recordings and/or other materials delivered to my attention by no later than noon on Wednesday, October 3rd." (Verified Compl. ¶ 29.)

Bongiovanni did not return his recordings of GCM Research Department meetings, or any other confidential or proprietary information of GCM, by noon on October 3. Neither Bongiovanni nor his attorneys have responded in any way to GCM's demand for the return of its confidential and proprietary information. (Verified Compl. ¶ 30.) Bongiovanni still has not returned to GCM his recordings of GCM meetings, and the other confidential and proprietary information of GCM that is in his possession, custody or control. (*Id.* ¶ 31.)

Bongiovanni's recordings of GCM Research Department meetings and his failure to return those recordings to GCM have the potential to cause irreparable harm to GCM, which cannot be adequately compensated by money damages. The confidential GCM information contained on Bongiovanni's recordings could enable a third party to replicate or front-run one or more of GCM's proprietary trading strategies. (Verified Compl. ¶ 32.)

Section 12 of the Employment Agreement states:

> In the event of a breach or threatened breach by the Employee of paragraph 6, 7 or 8 of this Agreement, the Employee hereby expressly (i) agrees that the Company would suffer irreparable harm which may not be adequately compensated by money damages; (ii) agrees that the Company shall be entitled to an injunction, specific performance and other equitable relief to prevent a violation of the terms and conditions of this Agreement; and (iii) waives any requirement for the securing or posting of any bond in connection with the obtaining of any such relief.

(Verified Compl. ¶ 33; Verified Compl. Ex. A § 12.)

## II. LEGAL STANDARD

The Second Circuit applies the same legal standard for temporary restraining orders and preliminary injunctions. *See Local Int'l Longshoremen's Ass'n, AFL-CIO v. New Short Shipping*

*Ass'n Inc.*, 965 F.2d 1224, 1228 (2d. Cir. 1992). A preliminary injunction may be granted upon a showing of (1) irreparable harm and (2) a likelihood of success on the merits. *See Walman Pub. Corp. v. Landoll Inc.*, 43 F. 3d 775, 776-80 (2d. Cir. 1994). "Irreparable harm is 'injury for which a monetary award cannot be adequate compensation.'" *Natsource LLC v. Paribello*, 151 F. Supp. 2d 465, 469 (S.D.N.Y. 2001) (quoting *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995)). Preliminary injunctions generally are granted when there is urgent need for speedy action to protect a party's rights. *Jordache Enters., Inc. v. Levi Strauss & Co.*, 841 F. Supp. 506 (S.D.N.Y. 1993).

### III.   ARGUMENT

#### A.   GCM Will Suffer Irreparable Harm in the Absence of a Temporary Restraining Order or a Preliminary Injunction.

GCM will suffer irreparable harm in the absence of a temporary restraining order or a preliminary injunction because Bongiovanni secretly recorded, and has failed to return, confidential and trade secret information concerning GCM's trading systems and models, which information is crucial to GCM's business. (Verified Compl. ¶¶ 15, 20.) The confidential information that Bongiovanni secretly recorded is used by GCM to trade billions of dollars worth of financial instruments, including futures, foreign currencies, and equities. (*Id.* ¶ 6.) The confidential GCM information contained on Bongiovanni's recordings could enable a third party to replicate or front-run one or more of GCM's proprietary trading strategies. (*Id.* ¶ 32.)

A business's loss of trade secrets and confidential information cannot be remedied in full by money damages, and thus constitutes irreparable harm. *N. Atl. Instruments, Inc. v. Haber, 188* F.3d 38, 49 (2d Cir. 1999) ("loss of trade secrets cannot be measured in money damages because a trade secret once lost is, of course, lost forever," and issuing preliminary injunction where employer established that former employee's use of list containing client information

-7-

would result in irreparable harm); *Minnesota Mining And Mfg. Co. v. Francavilla*, 191 F. Supp. 2d 270, 278 (D. Conn. 2002) ("It is clear that enforcement of the employment agreement, specifically the clauses prohibiting disclosure of confidential information and restricting employment, is necessary to prevent 3M from suffering irreparable harm. Loss of confidential and proprietary information is not measurable in money damages.") (footnote omitted). Disclosure of the confidential information on Bongiovanni's recordings would also damage GCM's goodwill, which also constitutes irreparable harm. *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 445 (2d Cir.1977) (affirming finding of irreparable harm because plaintiff "presented ample evidence to show a threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages").

In addition, Bongiovanni admitted that his breach of the Employment Agreement's provisions governing confidential information and trade secrets would cause GCM irreparable harm. The Employment Agreement provides that, in the event Bongiovanni breaches Section 6, concerning GCM's confidential information and trade secrets, Bongiovanni "expressly . . . agrees that the Company would suffer irreparable harm which may not be adequately compensated by money damages" and "that the Company shall be entitled to an injunction, specific performance and other equitable relief to prevent a violation of the terms and conditions of this Agreement." (Verified Compl. Ex. A § 12.) That provision is binding and justifies a finding that GCM will suffer irreparable harm for which there is no adequate legal remedy if Bongiovanni breaches Section 6 of the Employment Agreement. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (where employment agreement stated that employee's breach of non-competition provision would cause irreparable injury and entitle employer to injunctive relief, the agreement "might arguably be viewed as an admission by Cohen that

plaintiff will suffer irreparable harm were he to breach the contract's non-compete provision");
*see also, e.g., POP Radio, LP v. News America Marketing In-Store, Inc.*, 49 Conn. Supp. 566,
577 (Conn. Super. Ct. 2005) (finding that, absent an injunction, plaintiff would suffer irreparable
harm for which there would be no adequate legal remedy because, inter alia, "[i]n the agreement
itself, at paragraph three, News America acknowledged that if there were a breach of the
agreement by it, POP's remedies at law would be 'inadequate' and that POP would be entitled to
an injunction").

For the foregoing reasons, GCM would suffer irreparable harm in the absence of the
requested temporary restraining order or preliminary injunction.

### B. GCM Is Likely to Succeed on the Merits Because Bongiovanni Clearly Violated His Employment Agreement.

To demonstrate a likelihood of success on the merits, a movant "need not show that
success is an absolute certainty. He need only make a showing that the probability of his
prevailing is better than fifty percent. There may remain considerable room for doubt." *Abdul
Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir .1985), *overruled on unrelated grounds*, *O'Lone
v. Estate of Shabazz*, 482 U.S. 342 (1987).

GCM is likely to succeed on the merits of its claims because Bongiovanni's actions in
secretly recording confidential GCM Research Department meetings, removing those recordings
from GCM's premises, copying the recordings to backup discs, and retaining the recordings and
backups despite GCM's demands to return them all constitute breaches of Bongiovanni's
Employment Agreement. *See Elm City Cheese Co., Inc. v. Federico*, 251 Conn. 59, 69 (1999)
("Even after the employment has ceased [and in the absence of a restrictive covenant], however,
'the employee remains subject to a duty not to use trade secrets, or other confidential
information, which he has acquired in the course of his employment, for his own benefit or that

of a competitor to the detriment of his former employer.'") (quoting *Allen Mfg. Co. v. Loika*, 145 Conn. 509, 514 (1958)); *American Express Centurion Bank v. Head*, 115 Conn. App. 10, 15–16 (2009) (identifying elements of breach of contract claim).

Bongiovanni's Employment Agreement requires him to "hold in a fiduciary capacity solely for the benefit of the Company" and not to "communicate, divulge, discuss, use, furnish, disclose, or make accessible to anyone [GCM's] confidential information and trade secrets other than in the ordinary course of the Employee's work for the Company." (Verified Compl. Ex. A ¶ 6(a).) The Employment Agreement further requires Bongiovanni to "take reasonable steps to assure that [GCM's] confidential information and trade secrets are stored securely on the premises of the Company and not to remove or send any such information from the premises of the Company without the express written consent of the Company." (*Id.*) In breach of the foregoing provisions of the Employment Agreement, Bongiovanni secretly recorded confidential GCM Research Department meetings without GCM's permission, removed those recordings from GCM's premises, copied the recordings to backup discs, and retained the recordings and backups despite GCM's demands to return them. (Verified Compl. ¶¶ 20-23, 28-31.) Amidst the foregoing activity, Bongiovanni held at least 12 job interviews with competitors of GCM, whom he refused to identify. (*Id.* ¶¶ 24-25.)

For the foregoing reasons, GCM is likely to succeed on the merits of its claim that Bongiovanni breached his Employment Agreement.

### C. The Court Should Issue the Preliminary Injunction Without the Posting of a Bond.

Rule 65 of the Federal Rules of Civil Procedure allows the Court to issue a preliminary injunction only if the moving party provides security or a bond. Fed. R. Civ. P. 65(c). The determination of the amount of the security to be posted by an applicant for preliminary

injunctive relief, however, is within the discretion of the Court and may be set at zero.  *See* Fed. R. Civ. P. 65(c); *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996).  Under the circumstances of this case, the Court should find that no bond is necessary because "there is no evidence, or likelihood, that Defendant[] will suffer any costs or damages if it is later found that [he has] been wrongfully enjoined or restrained."  *Dunkin' Donuts Inc. v. Albireh Donuts, Inc.*, 96 F. Supp. 2d 146, 151 (N.D.N.Y. 2000); *see also Clarkson Co. v. Shaheen,* 544 F.2d 624, 632 (2d Cir. 1976) ("[B]ecause, under Fed. R. Civ. P. 65[c], the amount of any bond to be given upon the issuance of a preliminary injunction rests within the sound discretion of the trial court, the district court may dispense with the filing of a bond." (citations omitted)).

In addition, the Court should dispense with the filing of a bond because, in his Employment Agreement with GCM, Bongiovanni agreed to "waive[] any requirement for the securing or posting of any bond in connection with the obtaining of any" injunction or other equitable relief.  (Verified Compl. Ex. A § 12.)

There is no risk that Bongiovanni will suffer any cost or damage if he is enjoined from using or disclosing GCM's confidential information and trade secrets, and he agreed to waive the requirement of a bond.  Accordingly, GCM respectfully requests that the Court dispense with the filing of a bond.

### IV.    CONCLUSION

For the reasons set forth above, the Court should grant GCM a temporary restraining order and a preliminary injunction (a) preventing Bongiovanni from using any GCM confidential information or trade secrets in any manner or for any purpose, (b) preventing Bongiovanni from disclosing any GCM confidential information or trade secrets to any person or entity outside of

GCM, and (c) requiring Bongiovanni to return to GCM all GCM confidential information and trade secrets, in any form, in his possession, custody, or control.

                PLAINTIFF, GRAHAM CAPITAL
                MANAGEMENT, L.P.

                By:     /s/ Daniel L. Schwartz
                        Daniel L. Schwartz (ct09862)
                        Howard Fetner (ct26870)
                        Day Pitney LLP
                        One Canterbury Green
                        201 Broad Street
                        Stamford, CT 06901
                        T: (203) 977-7300
                        F: (203) 977-7301
                        dlschwartz@daypitney.com
                        hfetner@daypitney.com

**CERTIFICATION**

      I hereby certify that on this 5th day of October, 2018, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

      I further certify that on this 5th day of October, 2018, a copy of the foregoing was sent by e-mail to:

    Mark P. Carey
    Mark P. Carey, P.C.
    71 Old Post Road, Suite One
    Southport, CT 06890
    mcarey@capclaw.com

                                                        /s/ Daniel L. Schwartz