UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GRAHAM CAPITAL MANAGEMENT, L.P.,<br>    Plaintiff, | : <br> : <br> : | |
| v. | : | 3:18-cv-01665-WWE |
| STEVEN BONGIOVANNI,<br>    Defendant. | : <br> : <br> : | |

## **MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Graham Capital Management ("GCM") has moved for a preliminary injunction against its former employee, Steven Bongiovanni, whose job responsibilities at GCM included developing quantitative methods and computer software programs for systematic trading. In its proposed injunction dated October 5, 2018, GCM requested that Bongiovanni be enjoined from (a) using any GCM confidential information or trade secrets in any manner or for any purpose, and from (b) disclosing any GCM confidential information or trade secrets to any person or entity outside of GCM. At first, GCM also requested that the court order Bongiovanni to return all GCM confidential information and trade secrets, in any form, in his possession, custody, or control. However, GCM has since withdrawn its request for a return order.

On September 27, 2018, GCM's counsel took Bongiovanni's deposition in connection with an age discrimination lawsuit Bongiovanni brought against GCM. Bongiovanni testified that he had secretly recorded meetings at GCM, including research department meetings, and that he still had five recordings in his possession. Bongiovanni also testified that he was actively seeking employment with other investment advisory firms during the time that he was secretly making recordings.

1

GCM alleges that Bongiovanni's recordings of GCM research department meetings have the potential to cause irreparable harm to GCM, which cannot be adequately compensated by money damages. GCM also initially asserted that Bongiovanni's "failure to return those recordings" contributed irreparable harm to GCM; however, GCM's most recent proposed injunction does not seek the return of Bongiovanni's copies of the recordings.

GCM argues that it will suffer irreparable harm in the absence of a preliminary injunction because Bongiovanni secretly recorded confidential and trade secret information concerning GCM's trading systems and models, which is crucial to GCM's business. GCM asserts that the confidential information that Bongiovanni recorded is used by GCM to trade billions of dollars' worth of financial instruments. Further, GCM fears that the information in Bongiovanni's recordings could enable a third party to replicate or front-run one or more of GCM's proprietary trading strategies.

Bongiovanni contends that GCM is merely trying to prevent him from successfully litigating his claims of discrimination and that this action is retaliation for those claims. Bongiovanni asserts that the primary objective in making his recordings was ensuring the accuracy of his age-based discrimination claims. Moreover, Bongiovanni submits that the recordings were kept only because they were accidentally and unintentionally copied from the recording device to Bongiovanni's automated backup on his laptop computer. Bongiovanni argues that the information on the recordings is not worthy of protection. Finally, Bongiovanni focuses on a failure by GCM to demonstrate a threat of irreparable harm.

The court convened an injunction hearing over the course of three days. The parties have since submitted thorough post-hearing papers.

## DISCUSSION

A preliminary injunction may be granted upon a showing of irreparable harm and either likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the movant. North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38, 43 (2d Cir. 1999). "Irreparable harm is 'injury for which a monetary award cannot be adequate compensation.'" Natsource LLC v. Paribello, 151 F. Supp. 2d 465, 469 (S.D.N.Y. 2001) (quoting Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)). Preliminary injunctions generally are granted when there is urgent need for speedy action to protect a party's rights. Jordache Enters., Inc. v. Levi Strauss & Co., 841 S. Supp. 506, 521 (S.D.N.Y. 1993).

**Breach of Restrictive Covenant**

At the outset, GCM argues that Bongiovanni breached his employment agreement, which GCM contends should create a presumption of irreparable harm. But even where all parties agree that a restrictive covenant has been breached, courts continue to consider all factors to determine the issue of irreparable harm and to decide whether the covenant is enforceable. See USAchem, Inc. v. Goldstein, 512 F.2d 163, 167-69 (2d Cir. 1975). Although the breach of a restrictive covenant is one factor in the analysis, it is not determinative. See id. at 168 ("Having determined that the covenant was of some validity and that it was breached, we are compelled to conclude nonetheless that [plaintiff] is entitled to no relief."); National Elevator Cab & Door Corp. v. H&B, Inc., 282 Fed. Appx. 885, 887 (2d Cir. 2008) ("[E]ndorsement of the Agreement constituted an additional factor weighing in favor of the conclusion that National had made the required showing of irreparable harm."); see also Ticor Title Ins. Co. v. Cohen,

3

173 F.3d 63, 69 (2d Cir. 1999) (observing that breach of employment contract "might arguably be viewed as an admission by [defendant employee] that [plaintiff employer] will suffer irreparable harm were he to breach the contract's non-compete provision.").

Here, Bongiovanni's employment agreement provides, in relevant part:

> Employee agrees to take reasonable steps to assure that such confidential information and trade secrets are stored securely on the premises of the Company and not to remove or send any such information from the premises of the Company without the express written consent of the Company. For the purposes of this Agreement, confidential information and trade secrets shall include, without limitation, proprietary investment and trading models, programs and systems and the underlying and associated design, source code, documents, data files, investment strategies, trading system rules, risk management techniques, algorithms, mathematical equations used to design trading strategies, and other information of a confidential nature (whether written or oral, contained in computer files or software, or otherwise) relating to or concerning the business, operations, management, services, products, activities or affairs of the Company, including client lists and client names.

While Bongiovanni admits to inadvertently copying audio recordings of team meetings onto his personal computers, he maintains that he took reasonable precautions to ensure that the recordings did not leave GCM's offices. For example, Bongiovanni submits that he always kept the recording device in his office and deleted each recording after he had reviewed it. Bongiovanni eventually discovered that the recordings had been automatically saved to his laptop upon being attached to the recording device at the office. Although Bongiovanni failed to assure that the information on the recordings stayed on GCM's premises, he proffers that the removal was an honest mistake.

It is worth noting that the content of the audio files is sketchy and significantly limited in scope when compared to the content of confidential information accumulated in Bongiovanni's head over years of employment with GCM. Therefore, Bongiovanni's

possession of these recordings does not significantly affect his ability to misappropriate GCM's proprietary information.

Bongiovanni argues that his intent in making the recordings is clear from his testimony. He testified in a believable and convincing way that his purpose in making the recordings was to support his discrimination claims against GCM. Indeed, when GCM challenged Bongiovanni's right to unemployment benefits, the Connecticut Employment Security Appeals Division Referee found that Bongiovanni "did not knowingly violate the employer's policy." Moreover, Bongiovanni submits that he has no intention of utilizing the recordings to compete against GCM and no intention of disclosing the recordings to any person or entity outside of GCM. Bongiovanni has offered to stipulate with GCM to a protective order that would effect the exact confidentiality GCM seeks here through injunctive relief. Accordingly, Bongiovanni contends that GCM has failed to demonstrate any threat of disclosure by Bongiovanni to a third party.

**Proprietary or Confidential Information**

Bongiovanni argues that the recordings do not contain "the actual values, formulas, and parameters required to replicate a GCM trading system." Nevertheless, perfect replication is not the test. The recordings need not contain a trading model's entire "recipe" to be protected, and the recordings do contain discussions of formulas, as well as GCM's ideas, methods, processes, and techniques to improve its trading strategies. See Elm City Cheese Co., Inc. v. Federico, 251 Conn. 59, 74-75:

> [D]espite the fact that the specific materials used in the plaintiff's manufacture of screws were common, commercially available components, the "plaintiff's ability to combine these elements into a successful ... process, like the creation of a recipe from common cooking ingredients, is a trade secret entitled to protection." (Internal quotation marks omitted.) In *Allen*

5

*Mfg. Co.,* we noted that "[t]he fact that every ingredient is known to the industry is not controlling for the secret may consist of the method of combining them which produces a product superior to that of competitors."

Moreover, Bongiovanni's employment agreement defines confidential information and trade secrets at paragraph 6, titled **Non-Disclosure of Confidential Information**:

> [C]onfidential information and trade secrets shall include, without limitation, proprietary investment and trading models, programs and systems and the underlying and associated design, source code, documents, data files, investment strategies, trading system rules, risk management techniques, algorithms, mathematical equations used to design trading strategies, and other information of a confidential nature (whether written or oral, contained in computer files or software, or otherwise) relating to or concerning the business, operations, management, services, products, activities or affairs of the Company . . . .

Finally, The Connecticut Uniform Trade Secrets Act ("CUTSA") defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Conn. Gen. Stat. Ann. § 35-51(d)

Portions of the information on Bongiovanni's recordings meet the definition of confidential information as described by both his employment agreement and CUTSA. Based on the transcripts of Bongiovanni's recordings and the accompanying testimony of GCM's representatives, Misters Tricker and Tanrikulu, the court finds that information contained on the recordings has *the potential* to derive independent economic value from not being generally known. Especially in the context of research and development, seemingly rough ideas can prove to be important. The court further finds that GCM has demonstrated reasonable efforts to maintain the secrecy of such

information.  Accordingly, the court adheres to its decision finding that the material on the recordings has value to plaintiff deserving of protection.

**Evidence of Irreparable Harm**

"To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent."  Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989).  "Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  Rodriquez ex rel Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999).  Accordingly, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."  Reuters Ltd. v. United Press Intern., Inc., 903 F.2d 904, 907 (2d Cir. 1990).

> We have previously observed that "the loss of trade secrets cannot be measured in money damages" where that secret, once lost, is "lost forever." *FMC Corp. v. Taiwan Tainan Giant Indus. Co.,* 730 F.2d 61, 63 (2d Cir.1984) (*per curiam* ). Some courts in this Circuit have read this passing observation to mean that a presumption of irreparable harm automatically arises upon the determination that a trade secret has been misappropriated. *See, e.g., Ivy Mar Co. v. C.R. Seasons, Ltd.,* 907 F.Supp. 547, 567 (E.D.N.Y.1995) ("[I]rreparable harm is presumed where a trade secret has been misappropriated."). That reading is not correct. A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets. Where a misappropriator seeks only to use those secrets—without further dissemination or irreparable impairment of value—in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy for such an injury. Indeed, once a trade secret is misappropriated, the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge. As Judge Conner has observed, where there is no danger that a misappropriator will disseminate proprietary information, "the only possible injury that [the] plaintiff may suffer is loss of sales to a competing product ... [which] should be fully compensable by money damages." *Geritrex Corp. v. Dermarite Indus., LLC,* 910 F.Supp. 955, 966 (S.D.N.Y.1996) (Conner, J.).

Faiveley Transport Malmo AB v. Wabtec Corp., 559 F.3d 110, 118-19 (2d Cir. 2009). The evidence in Faiveley showed that the defendant there competed directly with the plaintiff and had misappropriated plaintiff's proprietary trade secrets for years. Id. at 117-18. Even in such case, there is no automatic presumption of irreparable harm. Id. In contrast, here, Bongiovanni is not competing with GCM. Indeed, to date, he is not employed by anyone, much less a competitor.

During the course of the three-day hearing, testimony from GCM supervisory employees focused on the primary threat of harm caused by Bongiovanni's removal of recordings from GCM's premises: insecurity.

> First of all, Mr. Bongiovanni took secure information, confidential information from [GCM's] property and [GCM's] promises in breach of his employment agreement and took it to an insecure environment at his own home. That jeopardized the security of [GCM's] information, made it available, for all I know, for the entire world to see. I have no control over what Mr. Bongiovanni has done with the information. I have no idea who has access to his personal computing network. I have no idea how secure that information is.

[ECF No. 40, p. 144] (Tricker).

As the court noted during the hearing, it is willing and able to order Bongiovanni to return his copies of the recordings to GCM to remedy any danger of insecurity. Moreover, as discussed above, Bongiovanni has offered to stipulate to the return of his copies of the recordings. Nevertheless, GCM is not seeking the return of Bongiovanni's copies of the recordings. The problem for GCM is that the remedies it does seek – that Bongiovanni be enjoined from (a) using GCM's confidential information or trade secrets in any manner or for any purpose, and from (b) disclosing GCM confidential information or trade secrets to any person or entity outside of GCM – will not prevent the harm of insecurity illustrated by GCM's testimony. See American Airlines, Inc. v.

Imhof, 620 F. Supp. 2d 574, 580 (S.D.N.Y. 2009) (finding employee's taking copies of certain of employer's confidential documents in anticipation of joining competitor did not satisfy irreparable injury requirement of employer's motion to preliminarily enjoin employee's working for competitor, where, following discovery of taking, employee had offered to return or destroy all copies, at employer's option).  Moreover, GCM has not established an imminent and inevitable risk of disclosure warranting preliminary relief, as there is no evidence based on the facts presented that Bongiovanni will use or disclose GCM's confidential information or trade secrets in connection with some hypothetical future employment or otherwise.  See TGG Ultimate Holdings, Inc. v. Hollett, 2016 WL 8794465, at *4 (S.D.N.Y. Aug. 29, 2016) (finding that absent established, specific irreparable injury, in light of Faiveley, presumption of irreparable harm arising from trade secret misappropriation is not correct).  The instant case is one more step removed, as no evidence demonstrates that Bongiovanni is actively misappropriating from GCM.

The court understands GCM's wariness of Bongiovanni considering his secret recordings and discrimination lawsuit against the company.  However, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997).  GCM's mistrust of Bongiovanni is not evidence of irreparable harm sufficient to warrant the injunctive relief sought by GCM.  Accordingly, GCM's motion for preliminary injunction will be denied.

## CONCLUSION

For the foregoing reasons, GCM's motion for preliminary injunction is denied.

Dated this 14th day of February, 2019, at Bridgeport, Connecticut.

                                          /s/Warren W. Eginton
                                      WARREN W. EGINTON
                                      SENIOR UNITED STATES DISTRICT JUDGE