UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GRAHAM CAPITAL MANAGEMENT, L.P., *Plaintiff*, <br><br> v. <br><br> STEVEN BONGIOVANNI, *Defendant*. | No. 3:18-cv-01665 (VAB) |

**RULING ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES**

Graham Capital Management, L.P., ("Graham Capital" or "Plaintiff") filed this case after learning that its former employee, Steven Bongiovanni ("Defendant" or "Bongiovanni"), allegedly had secretly recorded meetings of Graham Capital's research department.

Bongiovanni has moved for an award of attorney's fees incurred in his successful defense of Graham Capital's motion for preliminary injunction.

For the reasons explained below, Defendant's motion for attorney's fees is **DENIED.**

I. **FACTUAL AND PROCEDURAL BACKGROUND**

Steven Bongiovanni once worked at Graham Capital Management developing quantitative methods and computer software programs for systematic trading. Mem. of Decision, ECF No. 54 at 1 (Feb. 14, 2019) ("Mem."). Bongiovanni filed a lawsuit against his former employer in Connecticut Superior Court, alleging age discrimination, a hostile work environment and retaliation. Mot. for Atty's Fees - Def.'s Mem., ECF No. 55-1 at 2 (Mar. 5, 2019) ("Def.'s Mem."). During his deposition in that lawsuit, Bongiovanni "testified that he had secretly

recorded meetings" and still held five of the recordings. Mem. at 1. On October 1, 2019, Graham Capital terminated Bongiovanni's employment. Def.'s Mem. at 2.

On October 5, 2018 Graham Capital sought a temporary restraining order and a preliminary injunction, based on its concern that Bongiovanni's recordings of Graham Capital research department meetings posed a threat of irreparable harm to GCM. Compl., ECF No. 1 (Oct. 5, 2018); *see also* Mot. for Temporary Restraining Order, ECF No. 5 (Oct. 5, 2018); Mot. for Preliminary Injunction, ECF No. 6 (Oct. 5, 2018). Graham Capital argued that Bongiovanni's recordings could enable a third party to replicate or "front-run" one or more of GCM's proprietary trading strategies. In the injunction proposed by Graham Capital, Bongiovanni would be "enjoined from (a) using any [Graham Capital] confidential information or trade secrets for any matter or for any purpose, and from (b) disclosing any [Graham Capital] confidential information or trade secrets to any person or entity outside of [Graham Capital]." Mem. at 1.

The Court granted Graham Capital's motion for temporary restraining order and scheduled a hearing on the motion for preliminary injunction. After a hearing held over the course of three days, the Court ultimately denied plaintiff's motion for temporary restraining order. The Court explained that:

> Portions of the information on Bongiovanni's recordings meet the definition of confidential information as described by both his employment agreement and CUTSA. Based on the transcripts of Bongiovanni's recordings and the accompanying testimony of GCM's representatives, Misters Tricker and Tanrikulu, the court finds that information contained on the recordings has *the potential* to derive independent economic value from not being generally known. Especially in the context of research and development, seemingly rough ideas can prove to be important. The court further finds that GCM has demonstrated reasonable efforts to maintain the secrecy of such information. Accordingly, the court adheres to its decision finding that the material on the recordings has value to plaintiff deserving of protection.

Mem. at 6-7. The Court also indicated its willingness to order the return of the recordings to Graham Capital:

> [A]ll of those tapes should be returned and no copies should be made of those tapes except insofar as I can be shown that there is some information that is useful in the state court proceeding.

Transcript, ECF No. 40 at 629 (November 27, 2018).

In its ruling, the Court reiterated its willingness to order Bongiovanni to return his copies of the recordings to remedy any danger of insecurity. Mem. at 8. Nevertheless, although Graham Capital initially sought the return of Bongiovanni's recordings, during the course of this and the state court litigation, Graham Capital focused on preventing Bongiovanni from using or disclosing his recordings for any purpose, except to the extent permitted by the Connecticut Superior Court in connection with the case captioned *Steven Bongiovanni v. Graham Capital Management, LP* Docket No. FST-CV-18-6034536-s.

The Court ultimately denied Graham Capital's motion for a preliminary injunction, mem. at 10, and found that: (1) Bongiovanni's failure to keep the recordings on Graham Capital's premise was an honest mistake, mem. at 4; (2) portions of the recordings could be confidential under the parties' employment agreement and the Connecticut Uniform Trade Secrets Act, of value to the Plaintiff and deserving of protection, mem. at 6-7; and (3) injunctive relief would not prevent the harm of insecurity illustrated by the Plaintiff's testimony and that the Plaintiff failed to established "an imminent and inevitable risk of disclosure warranting preliminary relief[,]" mem. at 8-9.

On March 5, 2019, Steven Bongiovanni filed a motion for award of attorney fees incurred during his defense of Graham Capital's motion for preliminary injunction. Mot., ECF No. 55 (Mar. 5, 2019).

On March 25, 2019, Graham Capital's filed a memorandum in opposition to Bongiovanni's motion. Mem. in Opp., ECF No. 25 (Mar. 25, 2019).

On May 1, 2019, Bongiovanni filed a timely reply. Reply, ECF No. 61 (May 1, 2019).

On May 6, 2019, Graham Capital filed a sur-reply. Sur-reply, ECF No. 64 (May 6, 2019).

## II. STANDARD OF REVIEW

One of the recognized common law exceptions to the American rule against fee shifting is that attorney's fees may be awarded where the party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975). In order to award bad faith fees under this exception, the losing party's claim must be (1) meritless; and (2) brought for improper purposes such as harassment or delay. *See Sierra Club v. U.S. Army Corps of Engineers,* 776 F.2d 383, 390 (2d Cir. 1985); *see also Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421-22 (1978) (holding that court may award fees upon finding that the plaintiff's actions were frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith).

Under this test, a claim is meritless or "entirely without color" when it lacks any legal or factual basis. *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980) (per curiam); *see also Nemeroff v. Abelson*, 704 F.2d 652, 656 (2d Cir. 1983) (affirming district court conclusion that "given the inadequate factual basis for the suit ... [plaintiff] had continued the litigation in bad faith by choosing to pursue peripheral, procedural issues ... without making any perceptible effort to locate evidence that might support the complaint.").

## III. DISCUSSION

"A claim is colorable, for the purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. The question is whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established." *Nemeroff*, 620 F.2d at 348. As the Supreme Court has noted:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

*Christiansburg*, 434 U.S. at 421-22.

Bongiovanni argues that he is entitled to an award of attorney's fees because Graham Capital's action was meritless and brought for improper, retaliatory purposes. Specifically, Bongiovanni contends that this action is an obvious attempt by Graham Capital to influence the resolution of Bongiovanni's pending Superior Court age discrimination litigation by casting Bongiovanni as a "bad actor" and depleting his limited resources.

Bongiovanni further argues that Graham Capital's litigation against him was initiated without a factual foundation, for a vexatious purpose, and pursued long after evidence was introduced demonstrating that it was unreasonable and frivolous.

Graham Capital responds that Bongiovanni secretly recorded Graham Capital Research Department meetings during a time when he was actively seeking employment with other investment advisory firms. Moreover, Graham Capital argues that the Court determined that the contents of Bongiovanni's recordings included discussions of formulas, as well as Graham

Capital's ideas, methods, processes, and techniques to improve its trading strategies. Mem. at 5; *see also Elm City Cheese Co., Inc. v. Federico*, 251 Conn. 59, 74-75 (1999).

> [D]espite the fact that the specific materials used in the plaintiff's manufacture of screws were common, commercially available components, the plaintiff's ability to combine these elements into a successful ... process, like the creation of a recipe from common cooking ingredients, is a trade secret entitled to protection. In *Allen Mfg. Co.,* we noted that the fact that every ingredient is known to the industry is not controlling for the secret may consist of the method of combining them which produces a product superior to that of competitors.

*Id*. (internal quotation omitted).

The Court agrees.

Here, Graham Capital presented evidence that Bongiovanni's secret recordings presented a potential threat of irreparable harm. The Court nevertheless denied Graham Capital's motion for preliminary injunction because Graham Capital could not demonstrate actual and imminent injury. Any irreparable harm proved too speculative, in light of Second Circuit precedent. In *Faively Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118-19 (2d Cir. 2009), the Second Circuit noted:

> We have previously observed that "the loss of trade secrets cannot be measured in money damages" where that secret, once lost, is "lost forever." *FMC Corp. v. Taiwan Tainan Giant Indus. Co.,* 730 F.2d 61, 63 (2d Cir.1984) (*per curiam* ). Some courts in this Circuit have read this passing observation to mean that a presumption of irreparable harm automatically arises upon the determination that a trade secret has been misappropriated. *See, e.g., Ivy Mar Co. v. C.R. Seasons, Ltd.,* 907 F.Supp. 547, 567 (E.D.N.Y.1995) ("[I]rreparable harm is presumed where a trade secret has been misappropriated."). That reading is not correct. A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets. Where a misappropriator seeks only to use those secrets—without further dissemination or irreparable impairment of value—in pursuit of profit, no such presumption is warranted because an award of damages will often provide a complete remedy for such an injury.

> Indeed, once a trade secret is misappropriated, the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge. As Judge Conner has observed, where there is no danger that a misappropriator will disseminate proprietary information, "the only possible injury that [the] plaintiff may suffer is loss of sales to a competing product ... [which] should be fully compensable by money damages." *Geritrex Corp. v. Dermarite Indus., LLC,* 910 F.Supp. 955, 966 (S.D.N.Y.1996) (Conner, J.).

*Faiveley*, 559 F.3d at 118-19.

Given the Second Circuit's irreparable harm standard for misappropriators, the Graham Capital's motion for preliminary injunction had to be denied. Moreover, Bongiovanni credibly testified at the preliminary injunction hearing that the purpose of the recordings was to support his discrimination claims against Graham Capital, not to misappropriate Graham Capital's confidential information. As a result, Graham Capital could not demonstrate a likelihood of imminent irreparable harm. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) ("To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent.").

The denial of the injunctive relief sought by Graham Capital, however, does not mean that seeking this relief was "unreasonable or without foundation" under *Christiansburg*. While the Court based its decision, in part, on the credibility of Bongiovanni's testimony of his intention not to use or disclose his recordings to enable a third party to replicate or "front-run" one or more of Graham Capital's proprietary trading strategies, mem. at 2, 5; the Court nevertheless determined that the information on the recordings could be of use to a competitor, *id*. at 6. Based on the evidence available to Graham Capital, the decision to seek an injunction was not necessarily unreasonable.

In any event, Bongiovanni has not shown by clear evidence that Graham Capital's claims were "entirely without color and made for reasons of harassment or delay or for other improper purposes." *See Sierra Club*, 776 F.2d at 390. In the absence of this evidence, Graham Capital's actions represented reasonable efforts to maintain the secrecy of its proprietary, confidential information.

Accordingly, Bongiovanni's motion for attorney's fees will be denied.

## CONCLUSION

For the reasons discussed above, Defendant's motion for attorney's fees is **DENIED.**

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of November, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE